Gregg L. Weiner
Stephen S. Rabinowitz
Fried, Frank, Harris, Shriver
 & Jacobson LLP
One New York Plaza
New York, NY  10004
(212) 859-4000

Attorneys for Plaintiff
Keryx Biopharmaceuticals, Inc.


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

KERYX BIOPHARMACEUTICALS, INC.,

|  |  |
|---|---|
| Plaintiff, | ECF CASE |
| - against - | 07 Civ. 10376 (CSH) |
| PANION & BF BIOTECH, INC., | **REPLY DECLARATION OF BETH LEVINE** |
| Defendant. | |

---------------------------------------------------------------------- x


1.   I am the same Beth Levine whose declaration, dated November 20, 2007, was

submitted in support of Keryx's motion for a preliminary injunction.  I make this declaration in

further support of Keryx's motion, and in particular to address and clarify some points raised by

the Declaration of Albert Wai-Kit Chan, which I have read.  I have personal knowledge of the

matters set forth in this declaration, except as otherwise indicated.

**Panion's Breaches of Section 8.1.1 of the License Agreement Requiring It To "Regularly Consult" With Keryx In Respect Of Pending Japanese Patent Applications**

2.   In its opposition papers, Panion & BF Biotech, Inc. ("Panion") states that it "has

always proceeded under the terms of the License Agreement in good faith" and "has promptly

provided updates related to the two Japanese [patent] applications to Keryx."  See Defendant's

Memorandum of Law In Opposition to Plaintiff's Motion By Order to Show Cause ("Opposition") at 17.  I respectfully disagree.

3.    As set forth in my prior declaration dated November 20, 2007, despite repeated requests by Keryx for an updated patent docket report before and after the Japanese Patent Office issued its second Office Action on August 28, 2007, Panion failed to notify Keryx of that second Office Action, and failed to provide an updated docket report until October 1, 2007.  See Levine Decl., ¶ 7 & Exh. 7.  Indeed, patent docket reports sent by Panion on September 5, 2007 and September 21, 2007 were incorrect and misleading because they did not reflect the second Office Action.  See Levine Decl., ¶¶ 4, 6 & Exhs. 2 & 6.

4.    Neither Panion nor its patent counsel, Albert Wai-Kit Chan, have ever explained Panion's transmittal to Keryx of incorrect patent docket reports, or Panion's failure to provide Keryx with a docket report identifying the second Office Action until October 1, 2007.

5.    In fact, Keryx only received a patent docket report identifying the second Office Action after Keryx had agreed to pay the fees of Panion's patent counsel.  See email dated September 22, 2007 from Cindy Chiang to Levine (attached as Exhibit 1 hereto).

6.    Nothing in the License Agreement permits Panion to withhold documentation regarding the licensed patent applications in order to compel Keryx to pay the fees of Panion's own counsel.  Section 8.1 of the License Agreement clearly states that Panion is "solely responsible for all costs and expense relating to such patent applications and patents."  Weiss Decl., Exh. 1.  However, correspondence from Panion as early as March 27, 2007 demonstrates that Panion was seeking to have Keryx assume more of the costs of patent prosecution in order "to ensure that patent prosecution is up to mutual satisfaction."  See email dated March 27, 2007 from Michael Chiang to Hoberman (attached as Exhibit 2 hereto).

2

7.    Dr. Chan's insistence that Japan Tobacco can and must respond to the second Office Action in such a limited time is unreasonable.  As stated in my previous declaration, the search for references relevant to the patent application yielded over 3,000 references to be analyzed. See Levine Decl., ¶ 19 & Exh. 20.

8.    Under pressure of time, Japan Tobacco was able to provide six relevant references identified thus far in its search, and I promptly forwarded those to Dr. Chan.  See Levine Decl., ¶ 22 & Exh. 24.  In his Declaration, Dr. Chan omits to mention that he agreed to include some of these references in Panion's response to the Office Action.  See email dated November 23, 2007 from Chan to Levine (attached as Exhibit 3 hereto).  Thus, even Panion acknowledges that Japan Tobacco's search has identified references that Panion considers helpful.

9.    Even though Panion has acknowledged that references provided by Keryx are relevant and useful, it has nevertheless refused, despite my specific requests on November 24, 2007, to tell Keryx which of the six references it will be submitting.  See emails dated November 24, 2007 from Levine to Dr. Chan (attached as Exhibit 3 hereto).

10.    As of the date of this declaration, I have not been informed which references will be used to support Panion's submission, and without such information, Keryx cannot comment fully on the submission.  This constitutes a breach of Panion's obligation, under Section 8.1 of the License Agreement, to provide Keryx with a minimum of ten days to which it is entitled under the License Agreement to review, comment and consult on the current version of Panion's response.  See Weiss Decl., Exh. 1.

11.    Panion's refusal to consult in good faith with Keryx also violates Panion's fiduciary duty to Dr. Hsu, the owner of the Japanese patent application, whose valuable patent rights in

Japan are being jeopardized by Panion in an attempt to secure leverage over Keryx. <u>See</u> letter dated November 12, 2007 from Rabinowitz to Chan at 4 (attached as Exhibit 4 hereto).

12.   Finally, I note that Panion has made no effort to deny that its abrupt decision <u>not</u> to pursue the three-month extension -- to which it initially agreed -- was based on anything but Panion's unrelated dispute with Keryx, rather than a legitimate, good faith reason not to pursue the extension. <u>See</u> Levine Decl., ¶¶ 12-15, & Exhs. 13-16.

**<u>Panion's Failure to Respond to Keryx Prior to Commencement of This Action</u>**

13.   I would also like to address the misleading statement in Panion's opposition papers that when "Panion requested that Keryx refrain from further breach of the License Agreement and cease its production of unsafe and unauthorized drugs, Keryx filed the instant action." <u>See</u> Opposition at 19. Panion is completely disregarding the efforts that Keryx made to resolve the issue of the alleged breach before commencing this lawsuit.

14.   On October 31, 2007, I wrote to Panion requesting details of the alleged breach and information on steps, if any, required to cure. <u>See</u> email dated October 31, 2007 from Levine to Chan (attached as Exhibit 5 hereto).  Moreover, in a letter from our counsel to Panion on November 12, 2007, Keryx agreed to source all future orders of ferric citrate API in accordance with Section 7.7(b) of the License Agreement; confirmed that there were no existing unfilled orders for ferric citrate API; and requested more information regarding any alleged breach and the method to cure. <u>See</u> letter dated November 12, 2007 from Rabinowitz to Chan at 3 (attached as Exhibit 4 hereto).

15.   Panion simply ignored our good faith efforts to understand and address its contention that there had been a material breach of the License Agreement, and instead went behind Keryx's back to threaten and harass Keryx's contractors, BRI Pharmaceutical Research,

Inc. ("BRI"), BioVectra DCL ("BioVectra"), and the PharmPro Services division of Fluid Air, Inc. ("PharmPro"), through various threatening letters (which were not copied to Keryx) and by filing an action against BRI. It was not until Panion took those unwarranted actions that Keryx commenced this action.

    I, BETH LEVINE, hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 26, 2007

                                                         Beth Levine

559883

5

# EXHIBIT 1

**From:** cindy chiang [mailto:cchiang@pbf.com.tw]
**Sent:** Saturday, September 22, 2007 9:37 AM
**To:** blevine@keryx.com;"Michael Chiang"; chank@kitchanlaw.com
**Cc:** Weiss, Michael S. [msw@keryx.com]; Hoberman, Ken [khoberman@keryx.com];
wtown@globoasia.com; kchan@globoasia.com; cchiang@pbf.com.tw
**Subject:** Re: Fw: RE: URGENT - IMMEDIATE ATTENTION REQUIRED

Dear Beth,

This is Cindy Chiang, Project Scientist of Panion & BF Biotech. I'm delegated to handle this matter by Panion. Thanks for your email on September 20, 2007. At the outset, we would like to point out that our company has no plans to sign the consent form provided by JT. As far as we understand it, GloboAsia also has no plans to sign the consent form provided by JT. The e-mail sent by Panion's Executive President, Michael Chiang, on September 20, 2007 is Panion's written consent.

Beginning from July 2007, we have noted that Keryx did not comply with the licensing agreement by:

1. Not providing the annual report which after we last communicated, we confirmed that we have received the updates now with thanks. But the CD we have received there is no document under the file name "FDA Meeting Minutes". We would appreciate if you could resend same to us.

2. Fail to provide a manufactured API batch records with CMC updates but we confirm we are in receipt now.

3. Not paying Panion for the API. We understand Keryx have purchased API without our knowledge and failed to pay us according to the licensing agreement which Panion is entitled. Keryx has never requested nor placed a purchase order to Panion, but only requested Panion to introduce Panion's Sub-contractor, BRI Biopharmaceuticals and their associates, so that Keryx could do some CMC improvement work which Keryx have agreed to pay for. As a good collaborative partner for Keryx, we did make an introduction based on this spirit providing that both Keryx and BRI keep us in the loop since we are the holder of DMF and has the legal responsibility for the API (which was not licensed to Keryx). Keryx did ask about the compound stock holding position and Panion responded that we did not have significant stock at the time but at no time indicated that we are not willing nor incapable to supply based on Keryx's new purchase order. Up until now, this issue has not been addressed by Keryx yet.

4. From March 27, 2007, we have been asking if Keryx would take license of two new indication patents but Panion has not received any specific answer from Keryx yet.

We understand our attorney, Dr. Albert Wai-Kit Chan, has provided some information about updating dockets to Keryx, and we further understand that Keryx will pay for all his fees associated with these activities. Accordingly, please wire fifteen thousand dollars ($15,000) to his account below so that he can finish his job.

ACCOUNT NAME: Law Offices of Albert Wai-Kit Chan, PLLC
BANK INFO: HSBC, Pomonok Office,
*156-02 Aguilar Avenue, Flushing, NY 11367*
ACCOUNT #: 010-77936-1
ABA#: 021001088
SWIFT CODE: MRMDUS33

Best regards,
Cindy Chiang
Project Scientist
Panion & BF Biotech Inc
Tel:+886.2.2655.8218 ext 302
Fax: +886.2.2655.8318


--
Open WebMail Project (http://openwebmail.org)


---------- Original Message -----------
From: "Michael Chiang" <michaelchiang@pbf.com.tw>
To: cchiang@pbf.com.tw
Sent: Sat, 22 Sep 2007 21:13:41 +0800
Subject: Fw: RE: URGENT - IMMEDIATE ATTENTION REQUIRED

> ---------- Forwarded Message -----------
> From: <blevine@keryx.com>
> To: "Michael Chiang" <michaelchiang@pbf.com.tw>
> Cc: <msw@keryx.com>, <khoberman@keryx.com>, <wtown@globoasia.com>,
<kchan@globoasia.com>, "Michael Stanley" <mstanley@stanleyphillips.com>
> Sent: Thu, 20 Sep 2007 09:03:21 -0400
> Subject: RE: URGENT - IMMEDIATE ATTENTION REQUIRED
>
> Dear Michael,
>
> Thank you very much for your response. We are pleased that Panion consents to our
proposed sublicense to Japan Tobacco (JT). We believe that this is an excellent
opportunity to develop and commercialize the compound in Japan. [UTF-8?]
> [BIG5?]
> I would like to confirm that your letter represents an agreement that you plan to sign
the form of consent provided by JT.? The key provision of the consent?is that if, in the
unlikely event where the Panion-Keryx license agreement were?terminated earlier than
the end of the term, then JT would have the right to step into our shoes and continue
to develop and sell ferric citrate?under the Panion-Keryx license without disruption.?
Panion would continue to have the right to pursue any breach claims against Keryx, but
JT??s ability to sell ferric citrate in [UTF-8?] Japan would be unaffected. ? I am sure you
can?understand that they would not want to spend millions of Yen developing the drug
in [UTF-8?] Japan,? only to?lose their rights if something occurred between Panion-
Keryx.?
> [UTF-8?]
> ?
> [UTF-8?]
> With respect to GloboAsia, while we completely understand that GloboAsia has
licensed all their rights to you (and nobody is claiming otherwise),?apparently under
Japanese law there are certain things that only the patent holder (not any of their
licensees) can do, such as apply for a patent term extension. ?Because of these laws,

JT wants assurances directly from GloboAsia that they are willing to execute the necessary documents for [UTF-8?] [BIG5?] Japan so that JT can get the full benefit of the patents. ?Additionally, for the same reasons?outlined above, JT wants assurances that if in the unlikely event there was a termination of the license agreement between Panion and GloboAsia, that JT??s rights to continue developing and commercializing ferric citrate in [UTF-8?] Japan would not be affected.?

>
> [UTF-8?]

> We realize that the requested consents are unexpected, but believe that they are reasonable and do not in anyway diminish?your rights or increase your obligations under the license.??They simply assure JT that if they are not in breach, then?they can continue development without interruption despite any breaks in the chain of license relationships? (GloboAsia-Panion-Keryx-JT).? We also believe they are?necessary to ensure that we develop a positive relationship with JT. [UTF-8?]

>
> I hope that this explanation helps you to understand why we are asking for both?your signature and GloboAsia's signature on the proposed consents.? I have attached them again for your convenience. [UTF-8?]

>
> Additionally, we have attempted to receive an updated docket from Mr. Wai-Kit Chan, but he has indicated that he needs your permission to do so. Can you please direct him to provide us with an updated docket and to be available to us for any questions we may have?? As mentioned in my previous e-mail, we will pay all of his fees associated with this activity.? We must have a current patent docket to be able to execute the sublicense agreement.

>
> [UTF-8?]
> ?
> We are available for a conference call tonight to discuss this at your convenience.

>
> Best regards,

>
> [UTF-8?]
> ?
> Beth

>
> [UTF-8?]
> ?
>
> Beth Levine

>
> Senior Vice President, General Counsel, Chief Compliance Officer & Corporate Secretary

>
> Keryx Biopharmaceuticals, Inc.

>
>

*750 Lexington Avenue*

- 20th floor

> New York, NY? 10022
>
> 212-584-5740
>
> 212-531-5961 (fax)
>
> [blevine@keryx.com](mailto:blevine@keryx.com)
>
>

---

> **From:** Michael Chiang [mailto:michaelchiang@pbf.com.tw]
> **Sent:** Thursday, September 20, 2007 6:04 AM
> **To:** Levine, Beth [blevine@keryx.com]; michaelchiang@pbf.com.tw
> **Cc:** Weiss, Michael S. [msw@keryx.com]; Hoberman, Ken [khoberman@keryx.com]; wtown@globoasia.com; kchan@globoasia.com
> **Subject:** Re: URGENT - IMMEDIATE ATTENTION REQUIRED
>
> [UTF-8?]
> ?
> Dear Beth
> [UTF-8?] [BIG5?]
> Apologies for the late reply as I was attending a meeting out of the office. I have relayed the message through Michael Stanley that Panion do not intend to uphold any consent. We view Keryx as a good partner all along. The request for consent came to us in early September and prior to that we have no knowledge of what was happening. Since the first day we received such request, we have indicated that we are willing to do so which is still our current position.? On the other hand, as far as GloboAsia is concerned, all the rights and responsibilities for those geographic areas listed in the Panion-Keryx Agreement, dated November 2005, has been assigned to Panion, and therefore GloboAsia is not in a position to consent on the sub-licensing. If GloboAsia has to consent, GloboAsia has expressed that they would only consent to Panion??s consent and GloboAsia has to know the content of Panion??s consent.? This is the history and what I would like to use this email as a consent to Keryx to enter into further sub-licensing agreement with Japan Tobacco.
>
> Best regards,
>
> Michael Chiang
> Executive President
> Panion & BF Biotech Inc
> Tel: +866-2-2655-8698
> Fax: +866-2-2655-8318
> Email: michaelchiang@pbf.com.tw
>
> --

> Open WebMail Project (http://openwebmail.org)
>
> ---------- Original Message ----------- [UTF-8?]
> ?
> > **From:** blevine@keryx.com [mailto:blevine@keryx.com]
> > **Sent:** Tuesday, September 18, 2007 11:46 PM
> > **To:** Michael Chiang; wtown@globoasia.com; kchan@globoasia.com; Michael Stanley
> > **Cc:** msw@keryx.com; khoberman@keryx.com
> > **Subject:** URGENT - IMMEDIATE ATTENTION REQUIRED
> > **Importance:** High
> > ?
> > Gentlemen, [UTF-8?]
> > ? [UTF-8?]
> > My name is Beth Levine and I am General Counsel of Keryx.? As you know, we have an opportunity
to significantly advance the development of ferric citrate in [UTF-8?] Japan through a proposed
sublicense arrangement with Japan Tobacco and their pharmaceutical subsidiary Torii Pharmaceuticals.?
Beginning on August 22nd , and continuing?via multiple contacts and attempted contacts through today,
we have tried in good-faith to work through your attorney,?Mr. Stanley, to obtain an updated and
complete patent docket (as required under Section 8.1 of our license agreement) as well as to obtain
your consent to the proposed transaction as requested by Japan Tobacco. [UTF-8?]
> > ? [UTF-8?]
> > Throughout this time, I have repeatedly requested? an updated patent docket and appropriate follow-
up on the proposed consents.? Although I received assurances that there were not?expected?to be any
significant issues with the consents, I have just learned that Panion is not prepared to sign the consents
as they are. [UTF-8?]
> > ?
> > There are two issues that require your immediate attention. [UTF-8?]
> > ? [UTF-8?]
> > **First**, it is imperative that we received a complete and current patent docket from Panion by the
close of business today, September 18th.? I would ask that the patent attorney also advise us of any
further action from the Japanese patent office in relation to the Response to Office Action that was filed
on June 7, 2007.? We are entitled to this information under Section 8.1 of the License Agreement and we
must have it to include in the Sublicense Agreement that Japan Tobacco will present to their Executive
Committee tomorrow.? [UTF-8?]
> > ? [UTF-8?] [BIG5?]
> > **Second**, Japan Tobacco has requested the consents for two reasons ??to ensure that they have the
ability to support and defend the patents in Japan and to ensure that their rights to ferric citrate in Japan
would not be adversely affected by a termination of the License Agreement between Panion and Keryx
(or, in the case of GloboAsia, between GloboAsia and Panion as well).? These requests are not
unreasonable.? If, in fact, there were a termination of the License Agreement between Panion and Keryx,
the consents would grant Japan Tobacco no greater rights than Panion has already granted to Keryx.?
Japan Tobacco would simply step into the shoes of Keryx and Panion??s right to receive royalties and
milestone payments with respect to [UTF-8?] Japan would continue. ? [UTF-8?]
> > ? [UTF-8?]
> > As you well know, Keryx has the right to sublicense its rights to ferric citrate without obtaining prior
consent from Panion or GloboAsia and if the consents are not forthcoming we will do our best to close
the deal with Japan Tobacco without them.? Even if we do close, I? would expect that Japan?Tobacco
will continue to want the consents and the long-term viability of the relationship would remain?in
jeopardy without them.? [UTF-8?]
> > ? [UTF-8?]
> > Because the consents are important to Japan Tobacco and we believe that it is in the best interests of
all concerned to do all that we can to ensure the development of ferric citrate in Japan, we would be
willing? to consider some financial payment to Panion upon execution of the deal with Japan Tobacco

(perhaps partial acceleration of the Japanese approval milestone and your legal fees for?reviewing?the consents)?in consideration of the execution of the consents (and the provision of the patent update), if we can resolve the outstanding issues today. [UTF-8?]

> > ? [UTF-8?]

> > Please understand that we are trying to advance the development of ferric citrate in a very important market.? We also believe the royalties payable to both Panion and Keryx can be?significant if the sales projections of Japan Tobacco are realized.? We believe that Japan Tobacco is a fantastic partner for this project and want to do everything we can to ensure that the deal is consummated and remains in place to ensure the commercialization of ferric citrate in [UTF-8?] Japan.? If we can close this deal, the development of ferric citrate in [UTF-8?] Japan will be accelerated to the benefit of all involved.? [UTF-8?]

> > ? [UTF-8?]

> > I am available throughout the day to attempt to resolve this matter.? In addition to my contact information below, I can also be reached on my cell phone at 646-644-8473. [UTF-8?]

> > ?

> > Sincerely, [UTF-8?]

> > ?

> > Beth Levine [UTF-8?]

> > ? [UTF-8?]

> > ?

> > Beth Levine

> > Senior Vice President, General Counsel, Chief Compliance Officer & Corporate Secretary

> > Keryx Biopharmaceuticals, Inc.

> >

*750 Lexington Avenue*

- 20th floor

> > New York, NY? 10022

> > 212-584-5740

> > 212-531-5961 (fax)

> > blevine@keryx.com

> > ?

> **------- End of Original Message -------**

>

> **------- End of Forwarded Message -------**

>

> Michael Chiang

> Executive President

> Panion & BF Biotech Inc

> Tel: +866-2-2655-8698

> Fax: +866-2-2655-8318

> Email: michaelchiang@pbf.com.tw

>

> --

> Open WebMail Project (http://openwebmail.org)

**------- End of Original Message -------**

# EXHIBIT 2

**From:** Levine, Beth [blevine@keryx.com]
**Sent:** Thursday, May 10, 2007 11:07 AM
**To:** Hoberman, Ken [khoberman@keryx.com]
**Cc:** Genovesi, Lina [lgenovesi@keryx.com]
**Subject:** RE: Panion-Keryx Issues
**Importance:** High

Ken,

When will you be in the office?  I've gotten some information from Lina about the situation in Japan, but there are a lot of holes in my understanding that need to be filled before I can feel comfortable presenting this information tomorrow.  It seems that there is an office action from the Japanese patent office for which a response was due on February 21, 2007.  The time for responding was extended by three months to May 21, 2007 but we have no idea whether Panion's counsel has prepared a response, nor have we been consulted on the response.  Do you have any other information on this issue?  We need to clear this up today and call Michael Chiang if necessary.

Beth

Beth F. Levine
Senior Vice President, General Counsel & Chief Compliance Officer
Keryx Biopharmaceuticals, Inc.
750 Lexington Avenue, 20th Floor
New York, NY  10022
(212) 584-5740
(212) 531-5961 (fax)
blevine@keryx.com

---

**From:** Hoberman, Ken [khoberman@keryx.com]
**Sent:** Wednesday, May 09, 2007 5:31 PM
**To:** Levine, Beth [blevine@keryx.com]
**Subject:** FW: Panion-Keryx Issues

See attached…I sent this to Lina already when it came, want to make sure you have it.  Will be ccing you and forwarding all correspondence re: IP moving forward.

KH

Keryx Biopharmaceuticals, Inc.
750 Lexington Avenue, 20th Floor
New York, NY 10022
tel. 212-531-5977
fax. 212-531-5961

---

**From:** Michael Chiang [mailto:michaelchiang@pbf.com.tw]
**Sent:** Tuesday, April 10, 2007 3:45 AM
**To:** Hoberman, Ken [khoberman@keryx.com]

**Cc:** kchan@globoasia.com; wtown@globoasia.com
**Subject:** RE: Panion-Keryx Issues

Dear Ken:
Thank you for your prompt reply and it was in good timing. I would also like to formally inform you another item (other than the two items we have informed you in our previous e-mail, dated March 27. 2007). We have now received the official action from the US Patent & Trade Office (USPTO) on U.S. Serial No. 11/206,981 filed August 18, 2005 ("Ferric Organic Compounds, Uses Thereof and Methods of Making the Same". by Kwok et al, Patent Dkt#859A-PCT-US). [USPTO Office Action is attached for your information]
Essentially, what the USPTO issued to us is known as a restriction requirement. The Examiner in this case has decided to divide the claims in the application into three groups:
**Group I:** claim(s) 77-78, 83-88, 91-102 drawn to forms of ferric citrate and compositions comprising the same, classified in class 556 and 514, subclass variable.
**Group II:** claim(s) 56-76 drawn to a method of making iron containing organic compounds including ferric citrate, classified in class 556, subclass 147.
**Group III:** claim(s) 79-82, and 89-90 drawn to a method of treating disorders responsive to ferric organic compounds, classified in class 514, subclass 502.
Of course, there are various routes to respond to the Office Action. We have internally evaluated the Office Action and we have given Group I as the highest priority since it covers the forms of ferric citrates and compositions. However, we would like to extend our courtesy to Keryx, our collaborator, an opportunity to comment. As such, we also would like to ask Keryx refrain from calling our patent attorney directly since this will incur expenses to Panion. Panion will gladly handle Keryx's comments directly and then decide the appropriate actions. We would appreciate if Keryx can provide us the comments within 3 weeks so that we can evaluate the next proper action.
Please acknowledge receipt of this e-mail and attachment. Thank you.
Sincerely yours,
Michael Chiang
Executive President
Panion & BF Biotech Inc
Email: michaelchiang@pbf.com.tw


--
Open WebMail Project (http://openwebmail.org)


---------- **Original Message** -----------
From: <khoberman@keryx.com>
To: $B9>=!L@(B <michaelchiang@pbf.com.tw>
Cc: <kchan@globoasia.com>, <wtown@globoasia.com>
Sent: Mon, 9 Apr 2007 11:35:57 -0400
Subject: RE: Panion-Keryx Issues

> Hi Michael,
>
> Michael Weiss is back in the office this week and I will speak to him about the outstanding proposals and get back to you shortly.
>
> Best,
> Ken
>
>

> Keryx Biopharmaceuticals, Inc.
> Kenneth Hoberman
>

*750 Lexington Ave.*

20th Floor

> New York, NY 10021
> tel. 212-531-5977
> fax 212-531-5961
>
>
>

---

> **From:** $B9>=!L@(J [mailto:michaelchiang@pbf.com.tw]
> **Sent:** Tuesday, March 27, 2007 10:35 AM
> **To:** Hoberman, Ken [khoberman@keryx.com]
> **Cc:** kchan@globoasia.com; wtown@globoasia.com; michaelchiang@pbf.com.tw
> **Subject:** Panion-Keryx Issues

>
> Dear Ken:
>
> Thank you for talking to Keith Chan this morning. Keith has reported to me on the results of your conversation. Here are the summary of my understandings and proposed next steps:
>
> 1. Keryx and Panion shall explore collaboration for Japan patent prosecution as a model for future collaboration on other country patent prosecutions ($B!H(JMethod for Treating Renal Failure$B!I(J, Japan Patent Application No. 10-527705, Applicant Chen Hsing HSU, Attorney Dkt. No. 1092-PCT-JP). Currently Panion is responsible for the prosecution of such Japan patent and I would be happy to explore financial arrangement for Keryx involvement to ensure that the patent prosecution is up to mutual
> satisfaction.
>
> 2. Panion has filed two additional indication patents in the year of 2007: ($B!H(JMethod of Reversing, Preventing, Delaying or Stabilizing Soft Tissue Calcifications$B!I(J, International Application No PCT/US07/02157, filed January 26, 2007 and $B!H(JMethod of Treating Chronic Kidney Disease$B!I(J, International Application No. PCT/US07/02151, filed January 26, 2007). Panion is happy to formally request Keryx to exercise the Right of First Negotiation and Right of First Refusal as indicated in the Panion-Keryx Agreement of November 7, 2005. Please express Keryx$B!G(Js interest by
> replying to this e-mail.
>
> I am looking forward to hearing from you and excited about the opportunity to working together again.
>
> Michael Chiang
> Executive President
> Panion & BF Biotech Inc
>
> --

> Open WebMail Project (http://openwebmail.org)
**------- End of Original Message -------**

# EXHIBIT 3

**From:** chank [mailto:chank@kitchanlaw.com]
**Sent:** Sunday, November 25, 2007 12:11 PM
**To:** Levine, Beth [blevine@keryx.com]
**Cc:** Genovesi, Lina [lgenovesi@keryx.com]; chank
**Subject:** RE: Our Dkt 1092-PCT-JP; References Due: Noon November 26th.

Dear Beth,

As I have stated, the final draft is the one sent on October 11. No further characterization of the references will be made but it will be simply stated that "the enclosed references will support the applicant's position." An Examiner interview will be scheduled after filing the response to state that the references cited in the office action are irrelevant, as previously recommended by Lina, and, therefore, should not be considered.

Should Keryx want to characterize the references you have sent or will be sending, please feel free to do so and we will consider it.

Note that noon, tomorrow, November 26th, will be the last time we will take any more references. I was advised that since it may take at least three weeks for the Examiner to consider our response, we can submit references in this period. If the Examiner agrees that all cited references in the office action are irrelevant, the references sending with this response are of no use.

Have a good weekend.

Please acknowledge receipt of this e-mail via e-mail.
Sincerely,

Albert Wai-Kit Chan
Law Offices of Albert Wai-Kit Chan, PLLC
World Plaza, Suite 604
141-07 20th Avenue
Whitestone, NY 11357
Tel: (718) 799-1000
Fax: (718) 357-8615
-----------------------------------------------------------------

The information transmitted herein is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer. Thank you for your cooperation

**From:** blevine@keryx.com [mailto:blevine@keryx.com]
**Sent:** Sat 11/24/2007 4:55 PM
**To:** chank
**Cc:** lgenovesi@keryx.com
**Subject:** Re: Japanese Patent Prosecution; Our Dkt 1092-PCT-JP; Search and References: Noon November 26th.

Dear Kit,

Without seeing a final draft of the response, I cannot comment on the manner in which the references will be presented to the patent examiner or the commentary that will accompany them. Keryx is entitled to review the response prior to submission. At this point I don't know which of the references you have decided to include, nor can I comment on the manner in which they are presented. Please provide a copy of the current draft as the deadline for submission is quickly approaching.

Beth

-----Original Message-----
From: chank <chank@kitchanlaw.com>
To: Levine, Beth [blevine@keryx.com]
CC: Genovesi, Lina [lgenovesi@keryx.com]; chank <chank@kitchanlaw.com>
Sent: Sat Nov 24 12:23:25 2007
Subject: RE: Japanese Patent Prosecution; Our Dkt 1092-PCT-JP; Search and References: Noon November 26th.

Dear Beth,

The references are presented by Keryx and would Keryx be a better position to comment them?  As I have stated previously, they will be used to support the draft sent on Oct 11.

Please acknowledge receipt of this e-mail.

Sincerely,

Albert Wai-Kit Chan, Ph.D.
Law Offices of Albert Wai-Kit Chan, PLLC
World Plaza, Suite 604
141-07 20th Avenue
Whitestone, NY 11357
Tel: (718) 799-1000
Fax: (718) 357-8615
-------------------------------------------------------------------------------------------
The information transmitted herein is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer. Thank you for your cooperation.

-----Original Message-----
From: blevine@keryx.com [mailto:blevine@keryx.com]
Sent: Saturday, November 24, 2007 11:24 AM
To: chank

Cc: lgenovesi@keryx.com
Subject: Re: Japanese Patent Prosecution; Our Dkt 1092-PCT-JP; Search and References: Noon November 26th.

Dear Kit,

I think Keryx is entitled to know what references Panion has selected and in particular how Panion proposes to characterize the reference, the subject matter being claimed, and the grounds on which the reference supports allowance of the application as a patent.  Please send me a copy of the complete proposed submission so that we can adequately review and comment on the submission.

Regards, Beth

-----Original Message-----
From: chank <chank@kitchanlaw.com>
To: Levine, Beth [blevine@keryx.com]
CC: Genovesi, Lina [lgenovesi@keryx.com]; chank <chank@kitchanlaw.com>
Sent: Sat Nov 24 05:11:44 2007
Subject: RE: Japanese Patent Prosecution; Our Dkt 1092-PCT-JP; Search and References: Noon November 26th.

Dear Beth,


The draft is the same and only the selected references is used.


Please acknowledge receipt of this e-mail.


Sincerely,


Albert Wai-Kit Chan, Ph.D.

Law Offices of Albert Wai-Kit Chan, PLLC

World Plaza, Suite 604

141-07 20th Avenue

Whitestone, NY 11357

Tel: (718) 799-1000

Fax: (718) 357-8615

----------------------------------------------------------------------------------------

The information transmitted herein is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you

received this in error, please contact the sender and delete the material from any computer. Thank you for your cooperation.

From: blevine@keryx.com [mailto:blevine@keryx.com]
Sent: Friday, November 23, 2007 9:55 PM
To: chank
Cc: lgenovesi@keryx.com; chungj
Subject: RE: Japanese Patent Prosecution; Our Dkt 1092-PCT-JP; Search and References: Noon November 26th.

Dear Kit,

I am glad that the initial references that Japan Tobacco identified will be helpful.  I would appreciate it if you would send me a copy of the current draft of the response so that we can review it and provide comments before submission to the Patent Office.

Regards,  Beth

_____

From: chank [mailto:chank@kitchanlaw.com]
Sent: Friday, November 23, 2007 5:19 PM
To: Levine, Beth [blevine@keryx.com]
Cc: Genovesi, Lina [lgenovesi@keryx.com]; chank; chungj
Subject: RE: Japanese Patent Prosecution; Our Dkt 1092-PCT-JP; Search and References: Noon November 26th.

Dear Beth and Lina,

We will use some of the references your office has provided to us on November 19 to support our response, which was sent to your office on October 11, 2007.  Should you want our office to consider any other supporting references, please send them before noon, Monday the 26th.

For your record, a divisional application of this application was filed on May 21st, 2007 pursuing all the original claims.  See page 8 of the patent docket summary, Oct 1st, 2007.

Please acknowledge receipt of this e-mail.

Sincerely,

Albert Wai-Kit Chan, Ph.D.

Law Offices of Albert Wai-Kit Chan, PLLC

World Plaza, Suite 604

141-07 20th Avenue

Whitestone, NY 11357

Tel: (718) 799-1000

Fax: (718) 357-8615

---------------------------------------------------------------------------------------

The information transmitted herein is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer. Thank you for your cooperation.

From: chank
Sent: Tuesday, November 20, 2007 5:35 PM
To: 'blevine@keryx.com'
Cc: chank; 'lgenovesi@keryx.com'
Subject: Japanese Patent Prosecution; Our Dkt 1092-PCT-JP; Search and References

Dear Beth,

We have repeatedly stated that a "search" for over six (6) weeks is unreasonable.  The scope and status of the search results sent on November 12, 2007 do not address how soon a complete analysis can be done.  We sent Dr. Lina Genovesi an email on November 12, 2007 asking how many articles were selected and the time to finish the tasks. This email was also copied to your office but was not answered.

It is our position that a detailed search can be produced by any firm professionally within 3-4 weeks especially if the search is conducted in the selected Databases.  It is simply not plausible that it would take over six (6) weeks to search selected databases for references and provide a detailed analysis. It is our opinion that JT has the resources to

finish the searches without the extension of time.

Please stop using words like "unjustified" or "misconduct" in our communications.  Our initial draft response was sent to your office on October 11, 2007 and currently the reference searches are advancing Panion's argument.  We are leading the patent prosecution and performing an appropriate and justified job for the protection of Panion's rights in Japan.

We have complied fully with our obligations under the License Agreement between Panion and Keryx.   In actuality, we have performed even more than what is required in the agreement at this stage, as, for instance, when Dr. Lina Genovesi called our office November 15 to propose the alternative argument for the relevancy of the cited references by the Japanese Patent office, and we considered this alternative strategy.

In light of the above, we will not ask for an extension of time. Also, please consult with the JT personnel carefully: as indicated in our previous email, our Japanese counsel has never agreed to the extension of time.

Nevertheless, we will review the six (6) references you have provided and see if they are helpful in advancing the prosecution of this case.

Please acknowledge receipt of this e-mail.

Sincerely,

Albert Wai-Kit Chan, Ph.D.

Law Offices of Albert Wai-Kit Chan, PLLC

World Plaza, Suite 604

141-07 20th Avenue

Whitestone, NY 11357

Tel: (718) 799-1000

Fax: (718) 357-8615

-------------------------------------------------------------------------------------------

The information transmitted herein is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer. Thank you for your cooperation.

**EXHIBIT 4**

Fried, Frank, Harris, Shriver & Jacobson LLP

One New York Plaza
New York, New York 10004-1980
Tel: +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com



FRIED FRANK

Direct Line:  212.859.8973
Fax:  (212) 859-4000
srabinowitz@friedfrank.com

November 12, 2007

**BY EMAIL AND FIRST CLASS MAIL**

Albert Wai-Kit Chan, Ph.D., Esq.
Law Offices of Albert Wai-Kit Chan PLLC
World Plaza, Suite 604
141-07 20th Avenue
Whitestone, NY  11357

Dear Dr. Chan:

      This office represents Keryx Biopharmaceuticals, Inc. ("Keryx").  We write concerning the dispute that has arisen between Keryx and your client, Panion & BF Biotech, Inc. ("Panion") and in particular in response to your emails to Beth Levine of October 31 and November 5, 2007, alleging that Keryx is in material breach of the Panion-Keryx License Agreement and threatening to terminate that agreement.  We also write concerning the letters sent by Jack Chung Esq., acting for Panion, on or about November 8 and 9, 2007, by which Panion has accused BRI Biopharmaceutical Research Inc. ("BRI") and BioVectra DCL ("BioVectra") of improperly using Panion-owned technology to produce Active Pharmaceutical Ingredient ("API") for Keryx, and by which Panion has sought to obtain from BRI and BioVectra documents containing trade secrets owned by Keryx.

      Keryx rejects any claim that it has breached the Panion-Keryx License Agreement or acted improperly in any way.  On the contrary, it is Panion that has contravened the letter and the spirit of the License Agreement, including by its unfounded and contrived claims of material breach against Keryx.  Such claims – though frivolous – are potentially quite damaging to Keryx, as is Panion's attempt to interfere with the contractual relations between Keryx and its contractors, and to obtain Keryx's trade secrets.  We expect that Keryx's responses to the specific issues you have raised will satisfactorily resolve these matters so that Keryx and Panion can focus on the development of Zerenex to their mutual benefit.

1.     <u>Sourcing of API from BRI/BioVectra</u>

      Keryx rejects any allegation that it has breached Section 7.7(b) of the License Agreement by obtaining API from BRI/BioVectra.  On the contrary, Keryx has at all times acted with

Fried, Frank, Harris, Shriver & Jacobson LLP

Albert Wai-Kit Chan, Ph.D., Esq.                    November 12, 2007
                                                     Page 2


Panion's knowledge and acquiescence in working with these contractors to obtain API.

It was Panion itself that directed Keryx to collaborate with BRI, and as early as August 14, 2005 Panion was made aware of pending production plans at BRI and BioVectra for Keryx. Moreover, Keryx's direct contacts with BRI and BioVectra were necessitated by Panion's professed inability to supply Keryx with API, even in quantities as small as 5 kg. Indeed, when Keryx asked Panion to participate in an on-site meeting with BRI to discuss the API production, Panion declined, citing its "small" size and "limited" resources. Once Keryx's preparations for the production by BRI/BioVectra were complete, Keryx expressly offered to order additional API material for Panion's needs if desired, in order to save Panion the trouble of procuring additional API. Panion declined the offer, and at no time in that interaction suggested that Keryx was acting improperly in ordering API from BRI/BioVectra, although Panion had advance notice of the order and a clear opportunity to voice its objection, if it had any. At the conclusion of the production, Panion was fully aware that BioVectra had produced API for Keryx, and indeed asked Keryx to provide details of the specifications developed during those production activities by BRI and Keryx – at Keryx's substantial expense – so that Panion could include those specifications in its updated DMF. Even in the several formal interchanges regarding the specifications, Panion raised no objection about the production at BioVectra or the supporting analytical work at BRI.

In other words, Panion was fully aware of Keryx's dealings with BioVectra and BRI, to which Panion made no objection at the time and from which Panion benefited. Accordingly, Panion's belated allegation – 6 months after the fact – that those dealings purportedly constituted a "material breach" of the License Agreement is unjustified and without basis. Moreover, Panion's assertion, in your email dated October 31, 2007, that this alleged material breach "has not been cured for more than ninety days" is transparently frivolous. Section 12.3.1(a) of the License Agreement expressly gives Keryx the right to cure any breach "within ninety (90) days after Licensor gives Licensee written notice thereof." Since written notice of the alleged breach was only given (by email with subsequent confirmation by first class mail) on October 31, 2007, it is clear that the 90-day cure period had not then even commenced, let alone expired. Panion's statement to the contrary, with its accompanying threat to terminate the License Agreement, is false and in bad faith, and itself constitutes a breach of the License Agreement. [1]

Keryx has already provided to Panion, in both hard copy and electronic format, the batch records for all four lots of API that Keryx obtained from BRI/BioVectra. By email dated September 17, 2007, Panion expressly acknowledged that it had received these batch records. Please note that Keryx has not ordered API from any source other than BRI/BioVectra, and that

---

[1]     Equally unjustified is the reference in your email – unsupported with any facts -- to "the misuse and badly manufactured API . . . ." Any such suggestion is wholly without basis and potentially damaging. Kindly cease and desist from making any such suggestions in the future.

Fried, Frank, Harris, Shriver & Jacobson LLP

Albert Wai-Kit Chan, Ph.D., Esq.                    November 12, 2007
                                                    Page 3

there are no pending, unfilled orders for API placed by Keryx.

        Since Panion has now – for the first time – professed that it is willing and able to serve as
a source of API, Keryx will submit future purchase orders for API to Panion in accordance with
Section 7.7 of the License Agreement. Keryx will expect from Panion binding commitments to
provide API that is manufactured in accordance with the specifications developed by Keryx and
BRI (which were provided to Panion) and pursuant to the delivery schedules set forth in such
purchase orders.

        Kindly confirm that the above undertaking suffices to cure any alleged breach in respect
of Keryx's sourcing of API from third party source(s), or else state specifically what Panion
contends is required to cure the alleged breach.

2.      Reporting under Section 7.9

        In your email of November 5, you allege for the first time that Keryx is in "material
breach" of Section 7.9 of the License Agreement for allegedly failing to provide progress reports.
That allegation is likewise unjustified. As recently as August 24, 2007, Keryx provided to
Panion a Regulatory, Non-clinical and Clinical Development Status Report dated August 23,
2007 and on September 11, 2007, Keryx provided to Panion a Chemistry, Manufacturing and
Controls Status Report dated September 10, 2007. Accordingly, Keryx has provided to Panion –
within the last quarter – progress reports on the subjects specified in Section 7.9 of the License
Agreement and is not in breach. Nevertheless, for the avoidance of doubt, Keryx will shortly
provide a supplemental report updating Panion on further progress through September 30, 2007.

3.      Royalty reports under Section 6.1

        Keryx hereby advises that no First Commercial Sale has been made under the License
Agreement. Accordingly, no royalty reports are yet due under Section 6.1 of the License
Agreement.

4.      Patent prosecution, including Japanese Patent Application

        Panion has failed to comply with Section 8.1.1 of the License Agreement, which
expressly requires that Panion "shall use reasonable efforts to prosecute the patent applications"
and "shall regularly consult with Licensee and shall keep Licensee advised of the status of all
patent applications and patents relating to the Patent Rights . . ." Despite numerous requests by
Keryx for a docket report on the Patent Rights, Panion repeatedly refused to respond to Keryx or
to provide a docket. Even when Keryx requested a docket report for Japan only in connection
with the sublicense agreement, Panion refused to do so until Keryx agreed to pay Panion's patent
counsel directly, which Keryx did on October 1, 2007. Panion has neither provided the
requested docket reports, nor provided any explanation for its failure to comply with these

Fried, Frank, Harris, Shriver & Jacobson LLP

Albert Wai-Kit Chan, Ph.D., Esq.                        November 12, 2007
                                                        Page 4

requests. Panion's failure to keep Keryx apprised of developments with respect to the patent applications is a serious breach of its obligations under the License Agreement. Please advise when Panion will produce a complete docket report for the Patent Rights.

Even more serious is Panion's behavior regarding prosecution of Dr. Hsu's Japanese Patent Application, which is of critical importance both to Keryx and to Japan Tobacco, Keryx's sublicensee. Faced with the second rejection of the Japanese patent application by the Japanese Patent Office, Panion initially permitted Japan Tobacco's patent counsel to collaborate with Panion's Japanese patent counsel in evaluating the pending Notice of Office Action issued by the Japanese Patent Office and determining how to prepare a response. As reported to Keryx by Japan Tobacco, it was agreed at the meeting between Panion's and Japan Tobacco's patent counsel that a 3-month extension should be sought so that Japan Tobacco could undertake a comprehensive search to identify and analyze published articles that support the patentability of the claimed subject matter. In your email dated October 24, 2007, Panion agreed to request a 3-month extension. But the very next day, October 25, Panion sent a further email in which it refused to seek the extension "based on the unresolved issues between Keryx and Panion." This refusal is a blatant attempt to hold hostage the prosecution of Dr. Hsu's patent application and to use it for leverage against Keryx. Moreover, Panion has now refused to permit its Japanese patent counsel to interact with Japan Tobacco's patent counsel. These actions by Panion violate Panion's obligation to consult in good faith with Keryx as well as the obligation of good faith and fair dealing that is implied in all contracts, including the License Agreement. This refusal also violates Panion's fiduciary obligations to Dr. Hsu, whose valuable patent rights in Japan are being jeopardized by Panion in a bad-faith attempt to secure leverage over Keryx – conduct that would give Dr. Hsu a cause of action against Panion.

As set forth in the email to you from Beth Levine, dated November 6, 2007, Keryx has offered to pay the incremental cost of requesting a three-month extension for responding to the Notice of Office Action, so that Japan Tobacco can perform a literature search in support of the pending claims and analyze the results of that search. Accordingly, Keryx requests that Panion promptly confirm that it will seek a 3-month extension, in accordance with its undertaking of October 24, 2007 and consistent with its duty to Keryx and to Dr. Hsu.

5.     Discussions with Dr. and Mrs. Hsu

There is absolutely no foundation for Panion's assertion that Keryx has "tortuously interfered" with the relationship between Panion and Dr. Hsu. On the contrary, as explained in the email to you from Beth Levine, dated October 26, 2007, Mrs. Hsu approached Keryx concerning an alleged prior assignment of patent rights by Dr. Hsu to Mrs. Hsu that purported to undermine the exclusive license granted by Dr. Hsu to Panion, from which Keryx's own rights as sublicensee flow. Far from interfering with the license agreement between Panion and Dr. Hsu, Keryx sought – and has succeeded – in persuading the Hsus to desist from challenging the exclusive license that Dr. Hsu granted to Panion.

Fried, Frank, Harris, Shriver & Jacobson LLP

Albert Wai-Kit Chan, Ph.D., Esq.                    November 12, 2007
                                                    Page 5

        We are unable to discern from your email what provisions of the License Agreement
Panion is relying on for its demand that Keryx refrain from further communications with the
Hsus and that Keryx provide to Panion records of such communications. Keryx gives no
undertaking in that regard. If Panion persists in these demands, please identify with specificity
the provisions of the License Agreement upon which such demands are based.

6.      Two new indication patent applications

        Keryx is still evaluating the two new indication patent applications for which Panion first
provided summary information on September 26, 2007, and will respond as promptly as
possible, and in any event before expiry of the Right of First Negotiation on December 25, 2007.
In this regard, Keryx is still awaiting the revised sets of claims which Panion agreed to provide
and which would be helpful to Keryx in evaluating what aspects of the claimed subject matter
extend to new indications as distinct from subject matter already within the field of the existing
License Agreement. Kindly advise when Panion will provide Keryx with the revised sets of
claims as previously agreed.

7.      Panion's letters to BRI and BioVectra

        Keryx rejects any allegation that BioVectra's manufacturing activities or BRI's testing
activities on behalf of Keryx were an improper use of Panion's technology. On the contrary,
Section 3.1 of the License Agreement specifically authorizes and grants to Keryx the right to
"develop, have developed, make [and] have made . . . the Product in the Territory, under the
Licensor Know-How and Patent Rights . . ." In Section 1.13 of the License Agreement,
"Licensor Know-How" is specifically defined as including "discoveries, processes, formulas,
instructions, data, inventions, know-how and trade secrets, patentable or otherwise" which are
"necessary or useful to Licensee in connection with the development [or] manufacture . . . of a
Product . . ."

        In other words, Keryx has bought and paid for the right to use Panion-owned technology
in order to have API made for the purpose of developing or manufacturing the licensed Product.
Moreover, Panion separately requested and authorized BRI to work with Keryx and BioVectra in
the API manufacturing and development activities that were contracted and paid for by Keryx.
Panion's recent communications with Keryx's contractors charging that the contractual activity
conducted for Keryx improperly uses Panion-owned technology is false and without foundation,
and constitutes a tortious interference by Panion with the relationship between Keryx and its
contractors. Moreover, Panion has no right to obtain from those contractors confidential
documents containing trade secrets owned by Keryx, and in attempting to do so Panion has
attempted to misappropriate Keryx's trade secrets. Keryx requires Panion to cease and desist
immediately from the foregoing improper conduct, and demands that Panion issue written
retractions of the allegations and demands that Panion made to BRI and BioVectra (with copies

Fried, Frank, Harris, Shriver & Jacobson LLP

Albert Wai-Kit Chan, Ph.D., Esq.                    November 12, 2007
                                                    Page 6

to Keryx).

     This letter is sent without prejudice to Keryx's contractual and other legal rights and defenses and without waiver thereof, all of which are hereby expressly preserved.

     We look forward to your prompt response concerning the foregoing matters.

                      Yours truly,

                      Stephen S. Rabinowitz

Cc:    Jack W. Chung, Esq.
       Beth Levine, Esq.

559240.1

# EXHIBIT 5

**From:** blevine@keryx.com [mailto:blevine@keryx.com]
**Sent:** Wednesday, October 31, 2007 2:10 PM
**To:** chank
**Cc:** lgenovesi@keryx.com; Cindy Chiang (PBF); msw@keryx.com
**Subject:** RE: Dkt #1100-A

Dear Kit,

I am in receipt of your e-mail.  Section 12.3 of the License Agreement to which you refer provides that "Licensor may terminate this Agreement in its entirety for cause at any time upon at least ninety (90) days prior written notice to Licensee upon the occurrence of any of the following:  (a) upon or after the breach of any material provision of this Agreement by Licensee if such breach is not cured within ninety (90) days after Licensor gives Licensee written notice thereof . . ." (emphasis added).

Article 22 of the Agreement states that any notice required under this agreement shall be in writing and provides that an e-mail is acceptable only if immediately followed by a written notice delivered by first class mail.  For this notice to be effective we await the first class delivery.

Assuming you perfect this notice, your e-mail represents the first allegation that Keryx is in material breach of its obligations under the Agreement.  As such, Keryx has ninety (90) days from today in which to cure such breach.  If such breach remains uncured after the 90-day period (on or about January 31, 2008), then Panion would have the right under Section 12.3 to terminate the Agreement upon ninety (90) days prior written notice (on or about April 30, 2008).

As your notice is not specific as to the nature of the breach, the damages allegedly incurred by Panion and the conduct necessary to cure such breach, we can not evaluate the merit of your claim or determine whether, if meritorious, such claim would constitute a "material breach."  Neither can we evaluate our ability to cure such alleged breach in the 90-day period.  Please provide further information on your claim as soon as possible so that we can respond in the time period contemplated by the Agreement.

I have informed our CEO of this unfortunate development and have advised him to cancel his trip at the end of next month pending resolution of this matter.  I imagine he will be in contact with Michael Chiang to discuss his decision.

Finally, with respect to the patent extension, we will advise Japan Tobacco of your decision not to seek an extension of time to respond to the Notice of Office Action.  However, I take this opportunity to remind you of Panion's contractual obligation under Section 8.1.1 of the Agreement to keep Keryx "advised of the status of all patent applications and patents related to the Patent Rights by providing [Keryx] with copies of such patent applications and patents and copies of all patent office correspondence

relating thereto including any office actions received by [Panion] and responses or other papers filed by [Panion]. [Panion] specifically agrees to provide [Keryx] with copies of patent office correspondence in sufficient time for [Keryx] to review and comment on such correspondence and submit to [Panion] any proposed response thereto. <u>[Panion] further agrees to provide [Keryx] with sufficient time and opportunity, but in no event less than ten (10) days, to review, comment and consult on all proposed responses to patent office correspondence relating to such patent applications and patents</u>." (emphasis added). The requirement to provide Keryx with "sufficient time and opportunity" is heightened with respect to Japan due to the presence of a sublicensee who also must have an opportunity to review and comment. Thus, we expect to receive a draft response to the Japanese Office Action well in advance of the November 28, 2007 deadline.

On a positive note, we have had further communication with Dr. and Mrs. Hsu and it appears that they have retracted their allegations and have affirmed the validity of Dr. Hsu's agreement with Panion. I do not believe it will be necessary for you to contact them.

I look forward to your prompt reply with your detailed notice of breach outlining your allegations and demands with sufficient specificity so that we may appropriately evaluate your claim and, if required, determine steps required to cure.

Regards,  Beth

Beth Levine
Senior Vice President, General Counsel, Chief Compliance Officer & Corporate Secretary
Keryx Biopharmaceuticals, Inc.
750 Lexington Avenue - 20th floor
New York, NY  10022
212-584-5740
212-531-5961 (fax)
blevine@keryx.com